1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16

| DANIEL-RAYMOND GALLIMORE, | ) Case No. SACV 23-1392-JFW (JPR) |
|---|---|
| Plaintiff, | ) |
| v. | ) ORDER SUMMARILY DISMISSING<br>) COMPLAINT WITH PREJUDICE |
| ANTONY J. BLINKEN et al., | ) |
| Defendants. | ) |

17      On August 2, 2023, Plaintiff filed this pro se civil-rights

18 Complaint under 42 U.S.C. § 1983; he also purports to raise

19 various Federal Tort Claims Act claims.[1]  Plaintiff paid the $402

20 filing fee.  The named defendants are Antony J. Blinken, Janet

21 Yellen, and the City of Huntington Beach.[2]  Because the Complaint

22

23      [1] Plaintiff does not provide a complete return address —
24 stating that he is "zip code Exempt" (see, e.g., Compl., ECF No. 1
at 1) — and mail the Court has sent him in another of his recent
25 cases has been returned as undeliverable.  Plaintiff's Complaint is
therefore subject to dismissal under Local Rule 41-6 as well as for
26 the reasons stated herein.

27      [2] Plaintiff lists numerous other persons and entities —
28 including the undersigned and the Magistrate Judge assigned to this
                                                    (continued...)

1  is "patently insubstantial" and frivolous, it is hereby dismissed
2  with prejudice.

3      Plaintiff alleges in the 209-page single-spaced Complaint
4  that he was "kidnapped, false imprisoned, held for ransom, forced
5  coerced intimidated into contracts, and  . . . frauded, by many
6  acting public servants/law enforcement officers." (Compl., ECF
7  No. 1 at 3.)  He brings 15 claims, purportedly under § 1983; 15
8  U.S.C. § 44; and 18 U.S.C. §§ 241, 242, 245, and 1342.  (See
9  Compl., ECF No. 1 at 1, 5-7.)  His allegations are largely
10  incomprehensible and replete with repetitive and irrelevant facts
11  and arguments, but they seem to be based primarily on his
12  apparent 2014 and 2018 arrests and detention in the Huntington
13  Beach and Orange County jails.  (See Compl., Gallimore Aff., ECF
14  No. 1 at 16; Huntington Beach Police Dep't Incident Rep.
15  Narrative, id. at 38; Gallimore Sworn Statement, id. at 54.)

16      In support of his factual allegations, Plaintiff refers to
17  several documents he attached to the Complaint.  (See Compl., ECF
18  No. 1 at 3-4.)  In a January 12, 2015 "affidavit," he stated that
19  he met "Lee Tran" "on or about" June 18, 2014, and Tran gave him
20  a $5,000 "acquisition fee" and a $5 deposit for the purchase of
21  real estate.  (Compl., "Gallimore Tran" Aff., ECF No. 1 at 24.)
22  Lee later told Plaintiff that the selling agent had sold the
23  property and asked for his acquisition fee back.  (Id.)
24  Plaintiff refunded Lee's $5 deposit and told Lee he needed more

25

26      [2](...continued)
27  case — as "Wrong Doers" (Compl., ECF No. 1 at 4-5), but those
   persons and entities are not specifically named as Defendants in
28  the caption (see id. at 1), as they must be, see Fed. R. Civ. P.
   10(a).

2

1   time and "would try to get the property in Escrow."  (Id.)  Lee

2   then said he "was going to file charges."  (Id. at 25.)  "Lee

3   told the DA and/or Huntington Beach Police" that he "gave

4   [Plaintiff] a $5,000.00 deposit" and "changed the agreement from

5   an acquisition fee to a deposit."  (Id.)  Lee "might be an ICE

6   agent."  (Id.)

7       In a second affidavit executed that same day, Plaintiff

8   stated that on or about September 5, 2014, he "had a bath room

9   fixture for sell [sic] on the internet" and "set up" a meeting

10  with "a guy calling himself Jim" who "said he wanted to buy" it.

11  (Compl., Gallimore Aff., ECF No. 1 at 16.)  Jim "showed up with

12  over ten other persons," and Plaintiff was "assaulted and hand

13  cuffed."  (Id.)  Jim identified himself as a detective for the

14  City of Huntington Beach, and Plaintiff told him that he "did not

15  want to do business with him" or "anyone else there" and did "not

16  consent to any of this."  (Id.)  Jim said that he "had a warrant

17  for DANIEL RAYMOND GALLIMORE" and "to search [Plaintiff's] RV."

18  (Id.)  Plaintiff informed Jim that if he forced, intimidated, or

19  coerced him "into a contract," his "fee to Jim would be

20  $100,000.00 a day."  (Id. at 17.)  Plaintiff asked to see Jim's

21  supervisor, Domingo, and told Domingo that his fee would be

22  "$200,000.00 a day."  (Id. at 18.)  Plaintiff asked to see a

23  magistrate that day, and Domingo "answered yes" and "gave his

24  word," but "[t]hat never happened."  (Id.)  The "[C]hief of

25  [P]olice[] and the Mayor" of Huntington Beach "[c]onspired with

26  the . . . officers."  (Id.)  On September 8, 2014, Plaintiff was

27  taken to court, and the "Judge changed [his] name" to "AKA

28  Gallimore, Daniel Raymond."  (Id.)  Plaintiff "did not . . . give

3

anyone the AUTHORITY to change [his] name." (Id.)  The Judge
"[c]onspired with the all above officers." (Id.)  The Judge "was
trying to extort $20,000.00 for a ransom for [Plaintiff's]
freedom" and when Plaintiff "could not come up with $20,000.00,"
the Judge tried "to extort $10,000.00." (Id.)  "On or about
[the] 14th day of captivity," Plaintiff "got an offer to get . .
. out" "[i]f [he] agreed to a . . . contract." (Id.)  Plaintiff
entered into the contract "[u]nder duress, corseted,
intim[id]ated, and forced." (Id. at 20.)

     In a "Sworn Statement," dated December 2, 2020, Plaintiff
recounted the events leading to his 2014 arrest and court
appearance. (Compl., Gallimore Sworn Statement, ECF No. 1 at 53-
54.)  He also stated that in 2009, the same judge "had the a
[sic] man with a gun, forced [Plaintiff] in jail, and held [him]
for ransom of $1,000.00 to get out of jail, by an imposter
judge." (Id. at 54.)  On November 27, 2018, he was "surrounded,
by what seemed like over 10 men" with guns and "was assaulted and
forced in chains." (Id.)  He was taken "from Huntington Beach,
to Santa Ana, Orange county Jail, [and] put . . . behind bars."
(Id.)  They "ask[ed him his] name, and [when he] did not answer,"
one of the men "forced [Plaintiff's] arm behind [his] back and it
felt as [if] he was going to brake [sic] [his] arm if [he] did
not say a name." (Id.)  Plaintiff was "forced, corseted, and
intim[id]ated, to contract with some of peoples and/or the ten
private corporations following, just to get out jail." (Id. at
55.)  The "peoples above" "perjured their oath of office,"
"committed treason against an American," were "impersonating
public officers, and/or law officers," and "conspired to commit

4

treason against an American." (Id. at 57.)  The "prosecutor and
judge . . . collud[ed] with some of [the] defendants in the
matter violating their jurisdiction." (Id. at 59.)  The "State
of California and the peoples and/or the Corporations foresaid
and wrong-doer [were] operating as a rogue government," in which
"[c]urrency [was] now issued by a private corporate United
States," "without charter authority using brutal force, fraud,
deceiving the courts, people and [Plaintiff]" and "[l]eaving the
. . . State of California peoples and/or the Corporations forsaid
wrong-doer with no legitimate authority for existence." (Id.)
The "so called judge conspired, with the lawyers, from Citibank,
N.A., Merrill Lynch, Option One Mortgage Corporation, and/or
Financial Title Company may be more, are all BAR members, that
one conflict of interest." (Id. at 60.)

      Because Plaintiff paid the $402 filing fee and is not a
prisoner, the Complaint is not subject to preservice screening
under 28 U.S.C. §§ 1915(e)(2) or 1915A.  See Brown v. California,
No. EDCV 11-0707-SVW (MLG), 2011 WL 5827958, at *1 (C.D. Cal. May
18, 2011), accepted by 2011 WL 5828717 (C.D. Cal. Nov. 18, 2011).
The Court may, however, sua sponte dismiss under Federal Rule of
Civil Procedure 12(b)(1) a frivolous, patently insubstantial
complaint for lack of subject-matter jurisdiction.  Neitzke v.
Williams, 490 U.S. 319, 327 n.6 (1989) (courts lack subject-
matter jurisdiction to consider "patently insubstantial"
complaints); see also Franklin v. Murphy, 745 F.2d 1221, 1227 n.6
(9th Cir. 1984) ("A paid complaint that is obviously frivolous
does not confer federal subject matter jurisdiction . . . and may
be dismissed sua sponte before service of process." (citation

5

1  omitted)); <u>Hagans v. Lavine</u>, 415 U.S. 528, 537-38 (1974) (a

2  federal claim so insubstantial as to be patently without merit

3  cannot serve as basis for federal jurisdiction).  A frivolous

4  complaint is one that "lacks an arguable basis in either law or

5  in fact."  <u>Martin v. Sias</u>, 88 F.3d 774, 775 (9th Cir. 1996)

6  (citing <u>Neitzke</u>, 490 U.S. at 325).

7       Plaintiff's Complaint is incomprehensible, patently

8  insubstantial, and frivolous — not to mention horribly prolix —

9  and as such, the Court is without subject-matter jurisdiction to

10 consider it.  <u>See</u> <u>Best v. Kelly</u>, 39 F.3d 328, 331 (D.C. Cir.

11 1994) (complaints alleging "bizarre conspiracy theories" may be

12 dismissed as frivolous under Rule 12(b)(1)).

13      Because the Court lacks subject-matter jurisdiction over

14 Plaintiff's Complaint, it is dismissed with prejudice.

15

16 DATED: August 24, 2023

17                                         JOHN F. WALTER
                                           U.S. DISTRICT JUDGE

18

19

20

21 Presented by:

22 _____

23 Jean Rosenbluth
   U.S. Magistrate Judge

24

25

26

27

28

                                   6